# Exhibit A

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WASHTENAW

CHRISTOPHER ARMSTRONG,

    Plaintiff,

vs.

CASE NO. 2011 __369__ CZ

ANDREW SHIRVELL,

**Melinda Morris**

    Defendant.

---

**DEBORAH L. GORDON, PLC.**
Deborah L. Gordon (P27058)
Sarah S. Prescott (P70510)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 275
Bloomfield Hills, Michigan 48304
Telephone 248 258 2500

RECEIVED

APR - 1 2011

Washtenaw County
Clerk/Register

---

## COMPLAINT AND JURY DEMAND

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this Court.

1.     This is an action for defamation, intentional infliction of emotional distress, abuse of process, invasion of privacy, and stalking.

2.      Plaintiff **Christopher Armstrong** (hereafter "Plaintiff") is a resident of Washtenaw County, Michigan.

3.      The events giving rise to this Complaint occurred in Washtenaw County, Michigan. In particular, all conduct complained of herein occurred while Defendant was physically present in the State of Michigan. The injuries alleged were inflicted on Plaintiff and suffered in Washtenaw County, Michigan.

4.      The amount in controversy exceeds Twenty Five Thousand Dollars ($25,000.00) exclusive of interest, costs, and attorney fees and the matter is otherwise within the jurisdiction of this Court.

## Background Facts

5.      At all times relevant here, Plaintiff was a private citizen and college student at the University of Michigan, Ann Arbor. Plaintiff served as the popularly elected student body president for the University's students, the Michigan Student Assembly ("MSA").

6.      At all times relevant here, Defendant was a public servant and licensed attorney, employed as an Assistant Attorney General for the State of Michigan and living as a resident in Michigan.

7       Defendant developed a bizarre personal obsession with Plaintiff in early 2010, although Defendant had neither met, nor spoken with Plaintiff whatsoever.

8.      Defendant has a documented history of employing intimidation, threats, and abusive language against others on whom he has become focused. Defendant

-2-

has consistently exhibited poor judgment and even violence against others. He has had several police encounters, including multiple arrests.

9. For example, on information and belief, Defendant has had to be physically pulled off of other students during his time as a student at the University of Michigan, when those students challenged his leadership of a student group.

10. Defendant was arrested for assault and battery of a fellow University of Michigan student. He later pled no contest, and was placed on probation and fined.

11. Defendant has been involved in numerous altercations with a Michigan State Representative, and has been described by her as "hostile" and "intimidating."

12. On information and belief, after completing his legal education, his law school, the Ave Maria School of Law, took the position with the State Bar of Michigan by and through its faculty and/or staff that Mr. Shirvell was unfit for the practice of law in the State of Michigan, in that he lacked the character and fitness necessary to practice.

13. Since that time, before turning his sights on Plaintiff, Defendant used his status as an attorney and his appointment as an Assistant Attorney General to provoke the expulsion of a student at the Michigan State University School of Journalism, after the two engaged in a verbal altercation.

14. In or around March 2010, Defendant generated a "Facebook" group by the name of "U of M Alumni and Others Against Chris Armstrong and his Radical MSA Agenda." Defendant used this publicly available platform to spread false and defamatory information about Plaintiff.

15. On Facebook, Defendant falsely and maliciously stated that Plaintiff "is planning to openly discriminate against pro-life, pro-family...organizations;" that Plaintiff is "Satan's representative," that Plaintiff is "dangerous" and a racist who had "targeted African Americans."

16. Eventually, Facebook deactivated Defendant's group, apparently because of its vituperative content.

17. In response, Defendant physically threatened Plaintiff on Facebook, writing "I will not be SILENCED by the likes of Armstrong. You're going down fruity-pebbles."

18. Defendant also made numerous threats on ongoing Facebook posts. For example: "***OUTRAGE ALERT*** I better not see Chris Armstrong at MY parish in Charlotte – that's all I got to say." Defendant apparently hales from Charlotte, Michigan.

19. Defendant further caused to be published on Facebook, referring to Plaintiff, "I remember the good old days when 'guys' like this would get their asses kicked at school." Defendant commented that he runs and lifts weights and is "in pretty good shape," so "last time I saw Chris Armstrong he was the one in fear of me – not the other way around."

20. Defendant would go on to issue subsequent public threats. For example, he repeatedly characterized Plaintiff as the Harvey Milk of Michigan. Harvey Milk was the first openly gay man to be elected to public office in California, and was assassinated.

21. In or around April 2010, Defendant developed and caused to be published a web log, more commonly known as a "blog," centered entirely on Plaintiff, Plaintiff's daily activities, Plaintiff's purported romantic interests, Plaintiff's family, and Plaintiff's acquaintanceships and friends. The blog was titled "Chris Armstrong Watch," and was published anonymously.

22. A "blog" is an individually generated, publicly accessible website typically containing commentary, graphics, video and links to other websites of special interest to the author. Blogs are often referred to as online diaries or personal journals.

23. Also in early 2010, Defendant began showing up at Plaintiff's school and his residence unannounced and uninvited; Defendant systematically followed Plaintiff and began surreptitiously cataloguing Plaintiff's movements and interactions with others.

24. On the blog, Defendant caused to be published numerous false and defamatory statements about Plaintiff.

25. Defendant falsely and maliciously stated that Plaintiff engaged in a homosexual orgy in his dorm room in October 2009.

26. Defendant falsely and maliciously represented that Plaintiff is an "out-right anti-Christian bigot who openly mock[s] God, the Bible and the sanctity of unborn human life."

27. Defendant falsely maliciously represented that Plaintiff cultivates, sponsors and/or encourages violence against others, including in opposition to the peaceable exercise of civil rights.

28. Defendant falsely and maliciously represented that he was "viciously attacked by Armstrong's thugs" and "violent lackeys" and placed in mortal danger of passing into martyrdom.

29. Defendant falsely and maliciously represented that Plaintiff has engaged in "unjust" physically "violent persecution" of Defendant.

30. Defendant falsely and maliciously represented that Plaintiff is a Nazi or ascribes to the teachings of the Nazi party.

31. Defendant falsely maliciously represented that Plaintiff is involved with "actively recruiting" University of Michigan freshman "to join the homosexual 'lifestyle.'"

32. Defendant falsely and maliciously stated that Plaintiff engaged in sexual intercourse in a church, and that there was "overwhelming evidence" of the same.

33. Defendant falsely and maliciously stated that Plaintiff engaged in sexual acts on a playground, and that there was "overwhelming evidence" of the same.

34. Defendant falsely and maliciously represented that "Chris learned to lie and deceive people…right from his own father."

35. Defendant falsely and maliciously stated that Plaintiff is engaging in a clandestine sexual relationship with another member of the Michigan Student Assembly.

36. Defendant falsely and maliciously represented that Plaintiff has a history of "demonstrated bigotry against Christians."

37. Defendant falsely and maliciously stated that Plaintiff lied to the University of Michigan Board of Regents.

**38.** Defendant falsely and maliciously represented that Plaintiff "believes himself to be not only superior to many others on so many levels (such as race, class and sexual preference), but deems himself to be above the law, too."

**39.** Defendant falsely and maliciously stated that Plaintiff is a pathological liar.

**40.** Defendant falsely and maliciously represented that Plaintiff ascribes to the teachings of the Klu Klux Klan, a terrorist organization known for its adherence to principles of white supremacy.

**41.** Defendant falsely and maliciously represented that Plaintiff is the University of Michigan student body "grand dragon." The title "Grand Dragon" is the title of the highest ranking member of the Klu Klux Klan in a given state.

**42.** Defendant falsely and maliciously stated that the office of the Speaker of the House of Representatives was reconsidering the Capitol Hill internship that Plaintiff had been offered.

**43.** Defendant falsely and maliciously stated that Plaintiff lied to a student group by telling them that he would not join an honorary society at the University of Michigan consisting of student leaders that Plaintiff was subsequently invited to join.

**44.** Defendant falsely and maliciously stated that Plaintiff is a racist. This occurred repeatedly on Defendant's blog, but was also verbally conveyed to Plaintiff's employer.

**45.** Defendant falsely and maliciously stated that Plaintiff is a radical homosexual activist.

-7-

46. Defendant falsely and maliciously stated that Plaintiff is Satan's representative.

47. Defendant repeatedly falsely and maliciously stated that Plaintiff is a "viciously militant homosexual activist." This occurred repeatedly on Defendant's blog, but was also verbally conveyed to Plaintiff's employer.

48. Defendant falsely and maliciously stated that Plaintiff hosted a "gay rush party", the goal of which was "to liquor up underage freshmen and promote homosexual activity in an effort to recruit them to the homosexual lifestyle." A "rush party" is typically understood to be a part of a formal process of recruiting students to join a Greek fraternity or sorority.

49. Defendant falsely and maliciously reported that Plaintiff had been repeatedly "in trouble with law enforcement," and that one such incident was pictured on his blog in which Plaintiff and his acquaintances were "apparently so out-of-control in their nonstop harassment of students that DPS [the Department of Public Safety] had to be called."

50. Defendant falsely and maliciously reported that Plaintiff has an "absolute lack of respect for law enforcement" officers, and Defendant has represented that Plaintiff was "disrespectful" to a Department of Public Safety officer because the officer was African American.

51. Likewise, Defendant falsely and malicious represented that Plaintiff has "repeatedly shown a total disrespect for the brave men and women—working class, everyday people—who make-up Ann Arbor's law enforcement community."

52. Defendant falsely and maliciously represented that Plaintiff is deranged or has a deranged character.

53. Defendant falsely and maliciously represented that Plaintiff undertook a prestigious internship solely as a "cover" to allow him to "party".

54. Defendant falsely and maliciously represented that Plaintiff's father was "sick of" Plaintiff's "incessant tantrums" and/or was "alarmed that the world was coming to see Chris as the narcissistic little snot that he truly is."

55. Defendant falsely and maliciously represented that Plaintiff harbors contempt for the law.

56. Defendant falsely and maliciously represented that Plaintiff suffers a narcissistic personality.

57. Defendant falsely and maliciously represented that Plaintiff has "SPIT in minority students' faces" by joining a student group on campus.

58. Defendant falsely and maliciously represented that Plaintiff enjoys "laughing at minority students' concerns" and "openly mocking Christians."

59. Defendant falsely and maliciously represented that Plaintiff harbors a "hatred for minority students."

60. Defendant falsely and maliciously represented that Plaintiff harbors both a "severe contempt" for others' civil rights and views "much like Nazi German's leaders."

61. Defendant falsely and maliciously represented that Plaintiff is an "elite pervert" and "privileged pervert."

62. Defendant falsely and maliciously represented that University of Michigan College Democrats criticized Plaintiff for "his racism."

63. Defendant falsely and maliciously represented that Plaintiff "despise[s] Christians" and harbors a "love of elitism."

64. Defendant falsely and maliciously represented that Plaintiff had "been caught-up in several recently-revealed 'gay' sex scandals."

65. Defendant falsely and maliciously represented that Plaintiff harbors "strong disdain for Christians who advocate a Biblical view of homosexuality."

66. Defendant falsely and maliciously reported the "STUNNING" "BOMBSHELL" that Ann Arbor Police "raided" Plaintiff's home during an "out of control" party. In fact, Defendant learned of the party before it began, and lingered outside Plaintiff's home into the wee hours of the morning snapping photographs and videotaping attendees of the party. Defendant then called the Ann Arbor police and reported a disturbance in order to generate a "newsworthy" event for his blog. Defendant promptly posted pictures of the "SCANDAL" that he created on his blog.

67. Defendant falsely and maliciously represented that there was a "demonstration in opposition" to Plaintiff's "racism" in front of Plaintiff's home. In fact, the only such "demonstration" was Defendant, alone, lingering outside Plaintiff's home, attempting to provoke an encounter with the object of his obsession, just hours after the above incident.

68. Defendant made numerous false representations that his various statements were factual, indeed based on insider, exclusive information, as well as "MANY vigilant confidential sources."

69. In fact, Defendant was well aware that his conduct regarding Plaintiff was baseless, liable to lead to litigation, and based in fraud. For example, Defendant intentionally misrepresented his identity in order to gain access to and information about Plaintiff, demonstrating clear knowledge that his true identity and purpose in pursuing Plaintiff was not legitimate. Defendant also lied to cover up his misconduct, including during an official investigation into his conduct, carried out by the Michigan Attorney General's Office.

70. Throughout the times in issue, Defendant knowingly and intentionally continued his course of unlawful conduct, despite warnings that his actions were improper. In fact, Defendant publicly expressed his intention to fraudulently declare bankruptcy to discharge any debts that might be incurred as a result of his intentionally tortious conduct.

71. According to the Report of the Michigan Chief Deputy Attorney General, Defendant used state resources for political commentary, Internet surfing and Facebook posting.

72. However, Defendant has maintained that none of his activities involved in this suit were within the scope of his duties as a public servant.

73. Defendant's actions were not for any proper purpose. In fact, Defendant has admitted, among other things to attempting to see Plaintiff "fired, censured or disciplined" by an out-of-state employer having nothing to do with the University of Michigan where Plaintiff is a student.

74. Over time, Plaintiff's blog and all of the false content Defendant published on it was accessed by at least many thousands of Internet users.

75. Plaintiff and his counsel have repeatedly requested retractions regarding defamatory statements described above. No retractions were made.

76. Instead, Defendant took an interview on national television, and stated falsely and maliciously that "the real bigot here is Chris Armstrong," while reiterating that he had never so much as met or spoken to Plaintiff.

## COUNT I

## DEFAMATION

77. Plaintiff repeats and realleges paragraphs 1 through 76 as if set forth fully herein.

78. The statements set forth above are false. Moreover, the statements, individually and jointly, tend to so harm the reputation of Plaintiff as to lower his reputation in the community or deter third persons from associating or dealing with him.

79. Furthermore, Defendant's statements involve materially false implications.

80. Defendant verbally published such statements, as described in detail above, negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

81. The statements set forth above do not involve matters of public concern.

82. When he made these statements, Defendant was not acting within the scope of any public authority, nor could he have reasonably believed he was acting within the scope of any such authority.

83. The above publications were not privileged.

84. Defendant's statements constituted defamation per se.

85. Defendant's conduct in this matter, which proximately caused Plaintiff's injuries and damages, was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for Plaintiff's physical and emotional wellbeing.

86. The publication of these remarks has resulted in actionable damage to Plaintiff's reputation in the community, emotional distress, humiliation, mortification, embarrassment, sleeplessness and anxiety, and other damage that may arise during the course of discovery.

87. Defendant's conduct deliberately and intentionally injured the Plaintiff; his acts were willful and malicious and are not dischargeable in bankruptcy.

## COUNT II

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

88. Plaintiff repeats and realleges paragraphs 1 through 87 as if set forth fully herein.

89. Defendant's conduct as outlined above was intentional or reckless.

90. Defendant's conduct as outlined above was extreme, outrageous, and beyond all possible bounds of decency, and of such character as to be intolerable in a civilized society.

91. Defendant's conduct was not for any proper purpose, nor was it within the scope of Defendant's public authority.

92. Defendant's conduct caused the severe and serious emotional distress of Plaintiff.

-13-

93. Defendant's conduct in this matter, which proximately caused Plaintiff's injuries and damages, was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for Plaintiff's physical and emotional wellbeing.

94. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered humiliation, mortification, embarrassment, sleeplessness and anxiety, and other damages that may arise during the course of discovery.

95. Defendant's conduct deliberately and intentionally injured the Plaintiff; his acts were willful and malicious and are not dischargeable in bankruptcy.

## COUNT III

## INVASION OF PRIVACY: FALSE LIGHT

96. Plaintiff repeats and reallegs paragraphs 1 through 95 as if set forth fully herein

97. Defendant caused there to be publicity concerning the Plaintiff.

98. The publicity placed Plaintiff in a false light in the public eye. Specifically, Defendant made statements that put Plaintiff in a false light.

99. Plaintiff had a right to keep intimate details and matters private.

100. Defendant communicated information about Plaintiff's intimate associations, actions and relationships with his family and others publicly.

101. The information was private to Plaintiff and was of no legitimate concern to the public.

-14-

102. Information that Defendant disclosed was extremely embarrassing to Plaintiff and caused him to suffer humiliation and extreme emotional distress.

103. Defendant's statements were highly offensive to Plaintiff and would be highly offensive to a reasonable person.

104. Defendant's conduct as outlined above was reckless and of such character as to be intolerable in a civilized society.

105. Defendant's conduct was not for any proper purpose, nor was it within the scope of Defendant's authority or otherwise immune or privileged.

106. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered humiliation, mortification, embarrassment, sleeplessness and anxiety, and other damage that may arise during the course of discovery.

107. Defendant's conduct deliberately and intentionally injured the Plaintiff; his acts were willful and malicious and are not dischargeable in bankruptcy.

## COUNT IV

### ABUSE OF PROCESS

108. Plaintiff repeats and realleges paragraphs 1 through 107 as if set forth fully herein.

109. Criminal investigation and proceedings were instituted or furthered by the Defendant against the Plaintiff.

110. Defendant abused the legal process by using it for his ulterior motive or purpose to cause vexation, trouble, embarrassment, damage to Plaintiff's reputation.

111. Defendant's acts were improper and not in the regular pursuit of bona fide allegations and claims.

112. The misuse of the criminal justice system was improper since Defendant knew, or should have known, that any allegations regarding Plaintiff were false and had been concocted to generate a "BOMBSHELL" disclosure for Defendant's blog.

113. As a direct and proximate result of Defendant's improper use of the judicial process, Plaintiff suffered humiliation, mortification, stress, embarrassment, sleeplessness, loss of reputation, anxiety, and other damage that may arise during the course of discovery.

114. Defendant's conduct deliberately and intentionally injured the Plaintiff; his acts were willful and malicious and are not dischargeable in bankruptcy.

## COUNT V

### INVASION OF PRIVACY
### INTRUSION UPON SECLUSION, SOLICITUDE,
### OR PRIVATE AFFAIRS

115. Plaintiff repeats and realleges paragraphs 1 through 114 as if set forth fully herein.

116. Plaintiff maintained privacy concerning details of his professional life.

117. Plaintiff had a right to keep those intimate details and matters private.

118. Defendant invaded Plaintiff's privacy by passing himself off as a representative or employee of the University of Michigan to Plaintiff's employer to gather information about Plaintiff's employment.

119. Defendant's method of obtaining information on Plaintiff was objectionable, fraudulent and would be objectionable to a reasonable person.

**120.** Defendant's conduct as outlined above was extreme, outrageous, and beyond all possible bounds of decency, and of such a character as to be intolerable in a civilized society.

**121.** Defendant's conduct was not for any proper purpose, nor was it within the scope of Defendant's authority or otherwise immune or privileged.

**122.** As a direct and proximate result of Defendant's conduct, Plaintiff has suffered humiliation, mortification, embarrassment, sleeplessness and anxiety, and other damage that may arise during the course of discovery.

**123.** Defendant's conduct deliberately and intentionally injured the Plaintiff; his acts were willful and malicious and are not dischargeable in bankruptcy.

## COUNT VI

### STALKING, MCL 600.2954

**124.** Defendant's actions described in the factual averments set forth in Paragraphs 1-76 amount to conduct prohibited under section 411h or 411i of the Michigan penal code, Act No. 328 of the Public Acts of 1931, being sections 750.411h and 750.411i of the Michigan Compiled Laws.

**125.** Damages incurred by a victim as a result of conduct prohibited in sections 750.411h or 750.411i may be recovered, together with exemplary damages, costs of the action, and reasonable attorney fees. MCL 600.2954.

**126.** As a direct and proximate result of Defendant's prohibited conduct, Plaintiff has suffered humiliation, mortification, embarrassment, sleeplessness and anxiety, and other damage that may arise during the course of discovery.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff **Christopher Armstrong** demands judgment against the Defendant as follows:

**A.  Legal Relief:**

1. Compensatory damages in whatever amount above Twenty Five Thousand Dollars ($25,000) he is found to be entitled;
2. Exemplary damages in whatever amount above Twenty Five Thousand Dollars ($25,000) he is found to be entitled;
3. An award of interest, costs and reasonable attorney fees.

**B.  Equitable Relief:**

1. An injunction out of this Court prohibiting any further acts of wrongdoing.
2. An award of interest, costs and reasonable attorney fees.
3. Whatever other equitable relief appears appropriate at the time of final judgment.

DEBORAH L. GORDON, PLC

_____
Deborah L. Gordon (P27058)
Sarah S. Prescott (P70510)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 275
Bloomfield Hills Michigan 48304
Telephone 248 258 2500

Dated: March 24, 2011

-18-

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WASHTENAW

**CHRISTOPHER ARMSTRONG,**

    Plaintiff,

vs.

CASE NO. 2011 _369_ CZ

**ANDREW SHIRVELL,**

**Melinda Morris**

    Defendant.

---

**DEBORAH L. GORDON, PLC.**
**Deborah L. Gordon (P27058)**
**Sarah S. Prescott (P70510)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 275
Bloomfield Hills, Michigan 48304
Telephone 248 258 2500

RECEIVED

APR - 1 2011

Washtenaw County
Clerk/Register

---

## JURY DEMAND

Plaintiff **Christopher Armstrong**, by his attorneys **Deborah L. Gordon, PLC,** hereby demands a trial by jury of all the issues in this cause.

                                          DEBORAH L. GORDON, PLC

                                          _/s/_

                                        **Deborah L. Gordon (P27058)**
                                        **Sarah S. Prescott (P70510)**
                                        Attorneys for Plaintiff
                                        33 Bloomfield Hills Parkway, Suite 275
                                        Bloomfield Hills Michigan 48304

Dated: March 24, 2011                    Telephone (248) 258 2500