UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER  ARMSTRONG,

      Plaintiff/Counter-Defendant,

vs.                                CASE NO. 2011-CV-11921

**ANDREW SHIRVELL**,             Hon. Arthur J. Tarnow

      Defendant/Counter-Plaintiff.

---

**DEBORAH GORDON LAW**
**Deborah L. Gordon (P27058)**
**Sarah S. Prescott (P70510)**
Attorneys for Plaintiff/Counter-Defendant
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
Telephone 248 258 2500
dgordon@deborahgordonlaw.com
sprescott@deborahgordonlaw.com

**Andrew L. Shirvell (P70472)**
In Pro Se
P.O. Box 2046
North Babylon, NY 11703
(734) 476-3916
shirvell@sbcglobal.net

**Phillip J. Thomas (P31298)**
Co-Counsel for Defendant
15450 E. Jefferson, Suite 160
Grosse Pointe Park, Michigan  48230
(313) 821-2600
philipjthomas@aol.com

**Robert G. Fleming  (P44610)**
Co-Counsel for Defendant
148 E. Grand River Road, Suite 106
Williamston, Michigan 48895
(517) 203-1100
fleminglaw2003@yahoo.com

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL OR MOTION TO AMEND THE JUDGMENT REGARDING DAMAGES**

Plaintiff **CHRISTOPHER ARMSTRONG**, through his counsel **Deborah Gordon Law**, responds in opposition to Defendant's Motion for New Trial or Motion to Amend the Judgment Regarding Damages, as set forth in the accompanying Brief and exhibits, and requests an order denying the motion in its entirety.

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
/s/Sarah S. Prescott (P70510)
Attorneys for Plaintiff/Counter-Defendant
33 Bloomfield Hills Parkway, Ste 220
Bloomfield Hills Michigan 48304
248-258-2500
dgordon@deborahgordonlaw.com
sprescott@deborahgordonlaw.com

DATED: October 12, 2012

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CHRISTOPHER  ARMSTRONG,**

      Plaintiff/Counter-Defendant,

vs.                                        CASE NO. 2011-CV-11921

**ANDREW SHIRVELL**,                 Hon. Arthur J. Tarnow

      Defendant/Counter-Plaintiff.

_____

**DEBORAH GORDON LAW**
**Deborah L. Gordon (P27058)**
**Sarah S. Prescott (P70510)**
Attorneys for Plaintiff/Counter-Defendant
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
Telephone 248 258 2500
dgordon@deborahgordonlaw.com
sprescott@deborahgordonlaw.com

**Andrew L. Shirvell (P70472)**
In Pro Se
P.O. Box 2046
North Babylon, NY 11703
(734) 476-3916
shirvell@sbcglobal.net

**Phillip J. Thomas (P31298)**
Co-Counsel for Defendant
15450 E. Jefferson, Suite 160
Grosse Pointe Park, Michigan  48230
(313) 821-2600
philipjthomas@aol.com

**Robert G. Fleming  (P44610)**
Co-Counsel for Defendant
148 E. Grand River Road, Suite 106
Williamston, Michigan 48895
(517) 203-1100
fleminglaw2003@yahoo.com

_____

<u>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL OR MOTION TO AMEND THE JUDGMENT REGARDING DAMAGES**</u>

# TABLE OF CONTENTS

*<u>Page</u>*

Index of Authorities ................................................................................................................ i

I.      Shirvell Was On Notice of Plaintiff's Claims; This is Not a Basis for a New Trial ................. 1

II.     Amendment in the Alternative Is the Appropriate Remedy Here ...................................... 5

III.    Newspaper Articles Were Properly Excluded ................................................................. 6

IV.     Siller Was Properly Excluded ........................................................................................ 7

V.      Cunningham Was Properly Excluded .............................................................................. 8

VI.     No Failure to Instruct on Affirmative Defenses ............................................................. 10

VII.    De Bene Esse Depositions & DeGraff Testimony Were Appropriate ............................... 11

VIII.   Neither Evidence Relating to Shirvell's Termination Nor Supposed Trial Misconduct
        Justifies New Trial ..................................................................................................... 13

IX.     First Amendment Instruction Was Correct ................................................................... 14

X.      No Basis Presented to Remit the Verdict ...................................................................... 15

XI.     No "Due Process" Concern with Verdict ....................................................................... 16

A.      Case Law Requires the Court to Defer to the Jury's Finding of Reprehensibility
        Here   ....................................................................................................................... 17

B.      Other Factors Support "Reprehensibility" .................................................................... 19

Certificate of Service ............................................................................................................. 20

# TABLE OF AUTHORITY

**Cases** ...........................................................................................................................................**Pages**

*Ale v. Tennessee Valley Authority*
   269 F.3d 680, 693 (6th Cir. 2001) ...................................................................... 6

*BMW of North America, Inc. v. Gore*
   517 U.S. 559 (1996)........................................................................................... 17

*Bose Corp. v. Consumers Union of United States, Inc.*
   466 U.S. 485, 499-511, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)).......................... 11

*Bridgeport Music, Inc. v. Justin Combs Pub.*
   507 F.3d 470 (6th Cir. 2007) ............................................................................. 18

*Dacon v. Transue*
   441 Mich. 315 (Mich. 1992) ................................................................................ 3

*Day v. Ingle's Markets, Inc.*
   2006 WL 239290 (E.D. Tenn. 2006) .................................................................. 17

*El Camino Resources, Ltd. v. Huntington Nat. Bank*
   2009 WL 1228680, 5 (W.D.Mich. 2009)............................................................. 11

*Farley v. Country Coach, Inc.*
   550 F.Supp.2d 689, 694 (E.D. Mich. 2008)........................................................ 15

*Fastenal Co. v. Crawford*
   609 F.Supp.2d 650 (E.D. Ky. 2009) ................................................................... 16

*Gregory v. Shelby County, Tenn.*
   220 F.3d 433, 443 (6th Cir. 2000). .................................................................... 15

*Houghton ex rel Johnson v. Keller*
   256 Mich.App. 336, 339-340; 662 NW2d 854 (2003)......................................... 13

*Hutchinson v. Proxmire*
   443 U.S. 111, 135 (1979). ................................................................................... 9

*Jackson v. City of Cookeville*
   31 F.3d 1354, 1358 (6th Cir. 1994) .................................................................... 15

*Royal Palace Homes, Inc. v. Channel 7 of Detroit*, Inc.
   197 Mich. App. 48 (1992),................................................................................... 3

*Sparf v. U.S.*
   156 U.S. 51, 79-80 (1895) ................................................................................. 14

*Woodruff v. Ohman*
   29 Fed. Appx. 337 (6th Cir. 2002)....................................................................... 6

### Statutes

15(b)(2) ........................................................................................................................................ 5

Fed. R. Civ. P. 61 ....................................................................................................................... 13

Fed. R. Civ. P. 8(a)(2) ................................................................................................................. 5

Fed. R. of Civ. P. 15(b)(2) .......................................................................................................... 5

Federal Rule of Civil Procedure 61 ............................................................................................. 7

Docket No. 200 is Defendant Andrew Shirvell's Motion for new Trial or Motion to Amend the Judgment Regarding Damages. The Motion offers no legitimate basis to re-try this case, nor to remit the verdict. Each of Shirvell's arguments for such relief is addressed serially below. For the reasons set forth within this response, Plaintiff urges the Court to deny the motion in its entirety with prejudice.

## I.      Shirvell Was On Notice of Plaintiff's Claims; This is Not a Basis for a New Trial

At Mot. 2-5 Defendant argues that the outcome of this case offends his Due Process rights because he was not on notice as to the nature of the defamation claim Plaintiff had raised.

Defendant has been on notice as to his potential liability throughout this case. His assertions to the contrary are specious. From the outset, the Complaint in this matter referenced Shirvell's Blog and asserted that it contained "numerous false and defamatory statements about Plaintiff." Compl. Para. 24. The Complaint detailed scores of statements Shirvell had made, both general and specific. Among other things, the Complaint alleged that Shirvell had defamed Armstrong by calling him a liar, by positing specific lies, and by asserting that Armstrong harbored contempt for the law.

During discovery in this matter, Defendant at no time served written discovery seeking to narrow or identify any issue in this matter. Specifically, Defendant never asked Armstrong to list which statements were alleged to be defamatory from his entire Blog.

Defendant had the opportunity to question Armstrong about what exactly he alleged to be defamatory, and in fact Shirvell marked **the entire Blog** as a deposition exhibit at Armstrong's deposition. **Exhibit A,** Armstrong Dep. 198. He then questioned Mr. Armstrong about the statements in the Blog that were alleged to be untrue. Mr. Armstrong answered by reading passages from the Blog, not one of which was laid out verbatim from the Complaint. He indicated there were other dishonest/defamatory statements. Then, rather than have Mr.

Armstrong specifically continue page-by-page through the Blog to continue to identify each defamatory statement, Shirvell altered his question:

> Q.   Well, you know what?  Let's speed this up and say, Mr. Armstrong, did you feel that most or the vast majority of the posts made in April and May were defamatory or cast you in a false light?
>
> A.   Yes.

**Exhibit B**, Armstrong Dep. 205.  Shirvell did not have Armstrong itemize the false/defamatory statements thereafter, in light of this answer.  Nor did he ever ask Armstrong to itemize all the defamatory statements from later posts in the Blog.

At his own deposition, Shirvell was questioned extensively about all facets of the Blog, and was thus on notice that the Blog's statements were in issue.  Indeed, questions on the Blog covered pages 144-333 of the deposition.  Shirvell cannot claim he was not aware of the content of the Blog being in issue in light of the deposition.

Not only was Shirvell on notice as to the nature of the allegation Plaintiff had made, but prior to trial, Plaintiff sent Shirvell a letter seeking to settle the case in return for a retraction. The proposal identified various claims which Plaintiff insisted should be retracted.  **Exhibit C**. Defendant responded, in part, that the statements went beyond those identified in the complaint. **Exhibit D**.

Shirvell never sought on summary judgment to dismiss the case for lack of "notice" as to what he was being sued about.  Nor did he renew the motion he had brought when he received the proposal to settle.  Nor did he seek to obtain discovery as to the statements he asserted went beyond the Complaint but were included in the retraction/settlement request.  Nor did he raise any concern with the scope of his potential liability in the joint final pretrial statement.

2

The above facts distinguish this matter from *Royal Palace Homes, Inc. v. Channel 7 of Detroit*, Inc., 197 Mich. App. 48 (1992), on which Shirvell relies. There, the plaintiffs had not identified any actual untrue things in the challenged newscast in the complaint. The defendant served discovery (interrogatories) seeking a list of each untrue/defamatory statement. The plaintiff had not specified what was actually untrue, and this prompted the defendant to seek summary disposition (i.e., for failure to state a claim).

Not only is *Royal Palace* not on point here, in light of the facts reviewed above, but the relief Defendant seeks here is not justified under its holding. Here, Defendant argues that he has lacked for notice of the claims against him, and he is seeking a new trial. But in *Royal Palace Homes*, the defendants were seeking dismissal outright. The court did not grant that relief, but instead indicated that the plaintiffs could amend their complaint to disclose the defamatory statements sued on. Defendant has come forward with <u>nothing</u> justifying a new trial under circumstances such as these. At best, his authority calls for an amendment to conform the Complaint to the evidence.

The only other case Defendant cites, *Dacon v. Transue*, 441 Mich. 315 (Mich. 1992), has no application here whatsoever. That case involved the failure of the plaintiff to plead a theory of negligence in a medical malpractice case. Specifically, the plaintiff never asserted until trial that the defendant doctor had delayed administering medicine improperly. Rather, the assertion until trial was that the *wrong* medicine was given. Not only was the delay theory never pled, but there was no mention of it throughout discovery or briefing because, as the Court noted, "Plaintiff's counsel discovered the factual basis for the delay theory three days before trial began." *Id.* at fn. 20.

Here, Shirvell does not and cannot argue that an entirely distinct theory emerged days before trial, which had never been mentioned before because it was unknown to the Plaintiff.

Furthermore, other than a couple of items listed on page 4 of his brief, Shirvell does not identify any item he feels went beyond the Complaint. As to the items he does list, those items *are* covered by allegations in the Complaint.  For example, the Complaint alleges that Shirvell defamed Armstrong when he called Armstrong a radical homosexual activist, described Armstrong as having contempt for the law and holding himself above the law, asserted Armstrong is an anti-Christian bigot and mocks Christians.  Compl. Paras. 38, 55, 47, 45, 26, 36, 58, 63.

Shirvell further suggests that sources of his defamation were surprises to him.  In fact, for example, Shirvell's national televised appearance was specifically pled in the Complaint. Compl. Para. 76.  The contact with Armstrong's internship supervisor, with words intended to bring about Plaintiff's termination, was specifically pled.  Compl. Paras 42 & 73.  The televised interviews were on DVD's **Shirvell** marked as his exhibits, and he did not object to their entry at the time of trial whatsoever.  Likewise, the flyer he complains was a surprise contains the same language/defamation as the Blog and was covered at Shirvell's deposition and marked at trial without objection.  Furthermore, Shirvell himself provided the flyer in discovery and at trial.  Any notion that these items were a surprise to Shirvell is simply incorrect.

Finally, Shirvell has not come forward with anything demonstrating prejudice here whatsoever.  Shirvell admitted at trial to publishing the statements that went before the jury.  It is not as if he did not realize what they were.  Nor can Shirvell show any prejudice when he learned at Plaintiff's deposition that the entire blog was defamatory, in Plaintiff's view, especially in that he cut Plaintiff off from identifying each and every defamatory statement

made in this matter. Shirvell had the opportunity after the deposition to seek discovery and/or dismiss the case for lack of "fair notice" and did nothing.

## II.    Amendment in the Alternative Is the Appropriate Remedy Here

Shirvell does not cite a single case in which a new trial was ordered or a verdict remitted on the basis of lack of notice. In this Court, the federal pleading standards govern. They required Armstrong to set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). That was done. Shirvell then had the opportunity in discovery to tease out the allegations, and become prepared for trial.

At trial, the entire Blog came into evidence, and that was at the stipulation of both parties. As such, the content of the Blog was tried to the jury "by consent," that is, with both parties' understanding and acceptance. Per Fed. R. of Civ. P. 15(b)(2):

> [W]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Under the express terms of this rule, if the Court found for some reason that the entire Blog was not put into issue in Plaintiff's original Complaint, it would be incumbent on the Court to treat the blog "in all respects as if raised in the pleadings" under Rule 15(b)(2).

Indeed, even if the Court views the statements placed before the jury as coming in under protest, Shirvell's motion still would not be well-taken. Federal Rule of Civil Procedure 15(b)(1) covers that contingency as well, with the same outcome. It provides:

> If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.

The court may grant a continuance to enable the objecting party to meet the evidence.

The Sixth Circuit has recognized that this Rule reflects, and the courts must honor, "a liberal policy of permitting amendments in order to ensure determination of claims on their merits." *Ale v. Tennessee Valley Authority*, 269 F.3d 680, 693 (6th Cir. 2001) (allowing amendment after the liability phase of trial to conform to evidence, although the defendant "may not have impliedly consented" to the expansion).

Here, of course, Shirvell clearly did impliedly consent by failing to object to the entire Blog coming into evidence.  But even had he not consented, then the Court was nevertheless required to "freely" grant amendment of the pleadings to conform to the evidence.  Shirvell cannot complain of a lack of a continuance to meet the evidence (his Blog in full) coming in, since he never sought one.

In short, Plaintiff did put Shirvell on notice of the nature of his defamation claim, and the Federal Rules' liberal pleading and amendment policies both support rejecting this motion.

## III.    Newspaper Articles Were Properly Excluded

The newspaper articles Defendant sought to introduce, Exhs. 103-107, 109-113, were clearly filled with inadmissible hearsay.  Defendant argues that they went to the issue whether Plaintiff was a public figure, but that question was not a jury triable question.  *Woodruff v. Ohman*, 29 Fed. Appx. 337 (6th Cir. 2002) (citing *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499-511, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)).

Defendant also argues that the documents went to his "state of mind" when he published his statements about Plaintiff.  However, he does not say what that so-called "state of mind" was or why it was relevant.  He further offers no analysis nor case law justifying the relief he seeks here.  Of course, he could not escape liability by claiming he simply republished information

6

others had previously published.  That is no defense to a defamation claim, as the jury was properly instructed in this case.  Mich. Civ. JI 124.24.  Finally, and perhaps most importantly, Shirvell testified at trial as to the items that he read, the sources of those items, what he saw and what he believed as a result of them.  If his point to the jury was that he was a well-prepared commentator and genuinely believed what he published about Armstrong, as found in various clippings, then the jury heard that.

As a result, even if there had been error here, which is not established, Shirvell could clearly not demonstrate prejudice from the rejection of these exhibits.  Federal Rule of Civil Procedure 61 erects a high bar to ordering a new trial:

> Unless justice requires otherwise, no error in admitting or excluding evidence-or any other error by the court or a party-is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court **must disregard all errors and defects that do not affect any party's substantial rights.**

*See also* Federal Rule of Evidence 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").

## IV.    Siller Was Properly Excluded

Conrad Siller had no direct involvement with the facts in this case.  He was not a witness to anything; rather, he was a Washtenaw County prosecutor who decided not to prosecute Shirvell for criminal stalking.  His testimony was properly excluded as improper, irrelevant and more prejudicial than probative.  Defendant planned to call Mr. Siller to give expert testimony as to the scope of the First Amendment, and whether Defendant's conduct violated the First Amendment.  Mr. Siller was never named as an expert, and the scope of the First Amendment is not a jury-triable question.  Finally, Mr. Siller's decision not to prosecute is totally irrelevant and unduly prejudicial because the stalking statute at issue (MCL

§ 600.2954(2)) specifically provides that neither a criminal charge nor conviction is required for civil liability to attach.

Moreover, as noted above, Shirvell could only prevail here by showing that any so-called "error" in excluding Siller's testimony affected Shirvell's substantial rights. Shirvell cannot show this because the jury was informed that he was never prosecuted, and that the prosecutor opted not to pursue criminal charges. Indeed, this was a subject covered by both counsel during closing arguments. Before, during or after trial Shirvell made no proffer of any testimony Siller could have given beyond this information, which the jury already knew.

The Court should also recall that Plaintiff had named former Attorney General Michael Cox to testify in this matter. The Court concluded that neither Siller nor Cox would be called, as *both* would be speaking to issues of the criminality of Shirvell's conduct. Had Siller been called, Cox would have explained why individual prosecutors do and do not charge crimes. Shirvell cannot show he was prejudiced by excluding all of this evidence. The Court made a determination that the criminal element of this was not relevant, per the plain terms of the statute at issue, and that decision stands on firm ground.

## V.      Cunningham Was Properly Excluded

Defendant wanted Kelly Cunningham to testify to introduce proposed defense exhibits 149-159, to which she was a party. *See* Proffer, Dkt. #186. Defendant suggests that Plaintiff never opposed Cunningham being called as a witness in the joint final pre-trial order, but fails to recognize that Plaintiff opposed the introduction of those exhibits for lack of foundation, hearsay and relevance. Final Pretrial Order, pp. 20-21. Cunningham had nothing else to offer, other than bringing in these documents.

As Shirvell made plain in the proffer and again in this motion, he wanted Cunningham called to convince the jury that Armstrong was a public figure. Yet as noted above, that was not a jury question. Furthermore, the Cunningham documents could not have established anything about Armstrong's public status figure. Cunningham became involved in this matter in response to (and following) publication of Shirvell's Blog and the defamation contained on it. A person cannot become a public figure by virtue of the wrongdoer's defamation. In other words, "those charged with defamation cannot, by their own conduct, create their own defense by making claimant a public figure." *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979).

The only other basis for calling this witness was supposedly to show that Armstrong went on the Anderson Cooper 360 television program to talk specifically about Shirvell, and not to talk about bullying more generally. Why Armstrong went on the program however, has nothing to do with this case. This is a case about whether statements Shirvell made about Armstrong were untrue and defamatory, not about why Armstrong did what he did. In any case, the emails that a publicist sent to a University of Michigan employee do not establish anything about Armstrong's personal motivations in taking the Anderson Cooper interview, even if the issue were remotely relevant.

Shirvell tries to argue that his failure to elicit testimony from Siller and Cunningham was prejudicial because of Gordon's closing, in which she urged that he had called no witnesses to support the truth of his assertions in his Blog. He seems to imply that Gordon was indiscriminately goading him for having no witnesses, and (we must apparently assume since he offers no proof) that her comments on these specific points substantially affected the outcome. *See* Fed. R. Civ. P. 61. In fact, Gordon's point (as reflected even in Shirvell's hand-selected excerpts) was specifically that Shirvell had no support *for the things he published*

9

*about Chris Armstrong, either at publication or at trial*.  Calling Siller or Cunningham would not have changed Gordon's argument one whit.  They did not know Chris Armstrong and could not have supported any of the defamatory statements or proved the "truth" of anything Shirvell published.[1]  Had he called them **both**, he still would have had absolutely no witnesses to rely on to support his Blog.

In short, Shirvell cannot establish prejudice, even if there were an error here, which there clearly was not.

## VI.    No Failure to Instruct on Affirmative Defenses

Shirvell next argues that the Court erred by failing to adopt his jury instructions.  Specifically, he claims that his affirmative defenses were not presented to the jury.  However, Shirvell does not say what affirmative defenses were not presented.  Nor does he cite any case law supporting the instructions he wanted given, specifically any authority justifying a new trial in these circumstances.

The fact is, the Court did not err at all.  The jury instructions given were the **standard** Michigan instructions. The instructions **do** incorporate affirmative defenses.  By way of example, one of Shirvell's defenses was that his words were true or substantially true, and another was that his words were mere opinion and yet a third was that they were not actionable words because they comprised rhetorical hyperbole or exaggeration that no one would really believe.

The standard instruction Mich. Civ. JI 118.01, which was read to the jury on defamation, indicates that "Defamation is a statement which is <u>false</u> <u>in some material respect</u>." Defendant was free to argue to the jury that his statements were true or just his opinion – and

---

[1] Shirvell also complains that the burden was on Plaintiff to establish defamation, not him.  He was free to argue that to the jury, and did so.

he did so.  Meanwhile, instruction 118.04 (which was read) deals with rhetorical hyperbole: "The meaning of a statement is that meaning which, under the circumstances, a reasonable person who hears or reads the statement reasonably understands to be the meaning intended." In short, Defendant's defenses were a part of the carefully developed instructions Michigan's Supreme Court has approved for this tort.

## VII.    De Bene Esse Depositions & DeGraff Testimony Were Appropriate

Next Defendant argues that de bene esse testimony was improperly admitted here.  This is the third time this issue has been presented to the Court in writing.  Defendant initially filed a motion to quash three de bene esse depositions.  Plaintiff responded.  The matter was argued.  The Court made its ruling, allowing the depositions based on times/dates/places agreed on the record.

Defendant nevertheless brought a motion in limine, offering nothing about the depositions themselves to alter the Court's prior ruling.  He put nothing before the Court indicating that the evidence taken was improper.  Rather, he asserted that the method of obtaining the evidence was improper, when plainly it was not:

> The simple fact, known to all trial practitioners, is that witnesses often become unavailable for trial, whether because of distance or conflicting schedules (as with testifying physicians). In such circumstances, de bene esse depositions taken shortly before trial are commonplace and are properly understood as part of the trial proceedings, not discovery.

*El Camino Resources, Ltd. v. Huntington Nat. Bank,* 2009 WL 1228680, 5 (W.D.Mich. 2009),

**Exhibit E**.

Shirvell's latest motion (the pending matter) again identifies nothing in the depositions that went to the jury that was inadmissible, and Shirvell has cited no authority for exclusion of admissible testimony due to the de bene esse format.  He is thus asking the Court to order a new trial because the jury heard testimony that was *admissible*, solely because it was taken in a de bene

esse deposition that the Court has already (properly) ruled was permissible.  No error has been identified, in short.

Of course, the Court should be aware that before the de bene esse deposition of Restuccia, Shirvell had examined him at his civil service hearing.  He was aware of the substance of Restuccia's testimony from that source.  Furthermore, Shirvell attended the de bene esse deposition in person and questioned Restuccia extensively.

As to the live witnesses, Schwedt and DeGraff, Defendant previously sought exclusion of these witnesses during in limine briefing on the theory that Plaintiff somehow failed to make appropriate disclosures per an Order of the Magistrate (Dkt. #103).  The Magistrate's Order was dated February 3, and it required disclosure of the expected testimony of certain witnesses so that Shirvell could depose them, if he choose.

Plaintiff provided Defendant with a summary of expected testimony on February 7, 2012 (Plaintiff's Second Amended Initial Disclosures), providing the best information available as of then.  Plaintiff also updated these disclosures March 5, 2012 (Plaintiff's Third Amended Initial Disclosures).  Defendant deposed Ms. Schwedt, but not Ms. DeGraff.  Thus, Defendant sought to exclude from trial a witness whose testimony *he elicited,* after being given notification of the content of the same (as to Schwedt) and a witness he simply choose not to depose at all (DeGraff).  Both testified live, and under these circumstances, Shirvell cannot possibly suggest that he has been prejudiced or otherwise had an unfair disadvantage in this cause.

Notably, Defendant has always been well aware of the testimony these witnesses would give; he initiated the contact with them while stalking Plaintiff.  He has also had their reports to

school and law enforcement officials since the outset of this case, as well as statements of both Schwedt and DeGraff in the Attorney General's Investigatory Report.

There was no error under law in allowing these witnesses to testify.  Even if one conceivably were identified, Shirvell has not demonstrated prejudice (nor even described some prejudice in a conclusory way) from the admission of this testimony.  Fed. R. Civ. P. 61.

## VIII.   Neither Evidence Relating to Shirvell's Termination Nor Supposed Trial Misconduct Justifies New Trial

Shirvell asserts that evidence relating to his termination should not have been admitted. Mot. 8.  He also argues at Mot. 9-10 that "throughout" the trial Plaintiff's counsel engaged in improper conduct, inflamed the jury, and mocked Shirvell.

Yet Shirvell nowhere specifies from the transcript a single question/answer he believes was in error, nor a single instance of misconduct—let alone one to which he objected timely. Shirvell does not attach the transcripts so that the Court can assess his arguments.  Nor does Shirvell offer an authority for his arguments whatsoever.  On this basis alone, these arguments must be deemed abandoned.  A party "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority."  *Houghton ex rel Johnson v. Keller*, 256 Mich.App. 336, 339-340; 662 NW2d 854 (2003).  The "failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Id.*

Furthermore, with respect to the issue of his termination, Shirvell himself first opened the door to the questioning about that issue.  He asserted at trial that Chris Armstrong was to blame for his termination.  Plaintiff then followed up by asking for the reasons given for the termination from the Attorney General.  This was simple and straightforward impeachment, which was proper after Shirvell opened the door to this area.

13

## IX.     First Amendment Instruction Was Correct

Defendant next argues that the Court's instruction that the jury must not independently apply the First Amendment was in error.  Defendant again cites no authority for this argument, and offers approximately two conclusory sentences to explain this position.

The fact is, the Court was correct to instruct the jury not to import its own assumptions as to what the First Amendment protects into this trial.  It is beyond cavil that the Court's duty is to instruct the jury as to the law, and it is the jury's province to apply the law.  The jury is not called upon to reinterpret the law or decide on its own what the law is.  If these propositions require citation, the case law is legion.  For example, in *Sparf v. U.S.*, 156 U.S. 51, 79-80 (1895), the Supreme Court explained:

> It is the duty of the court to instruct the jury on all questions of law which appear to arise in the cause, and also upon all questions, pertinent to the issue, upon which either party may request the direction of the court upon matters of law. And it is the duty of the jury to receive the law from the court, and to conform their judgment and decision to such instructions, as far as they understand them, in applying the law to the facts to be found by them; and it is not within the legitimate province of the jury to revise, reconsider, or decide contrary to such opinion or direction of the court in matter of law.

In short, the Court properly explained the First Amendment (as it applies to this case) to the jury in its defamation instructions.  The jury could not go beyond those instructions, as the Court advised.  No error exists here.

Furthermore, the instruction not to consider what the First Amendment might mean was necessary in light of Shirvell's efforts to raise the issue contrary to this Court's instructions from the outset of this case.  This continued right down to his closing in which Shirvell argued he had rights to behave as he did as an activist.

14

**X.      No Basis Presented to Remit the Verdict**

Shirvell argues that the verdict was "undeniably" excessive here, without a single citation to authority.  "The review of a jury's damages award is extremely deferential."  *Farley v. Country Coach, Inc.*, 550 F.Supp.2d 689, 694 (E.D. Mich. 2008).  Remittitur or new trial is improper unless the award is "**contrary to all reason**." *In re Lewis*, 845 F.2d 624, 635 (6th Cir. 1988) (emphasis added).  A jury verdict may not be remitted "unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Jackson v. City of Cookeville*, 31 F.3d 1354, 1358 (6th Cir. 1994). "[A]n award must stand unless it is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake."  *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 443 (6th Cir. 2000). "A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court." *Id.*

Other than asserting in conclusory fashion that the jury's award was "obscene," Shirvell gives no explanation.  He asserts that there was no evidence of economic or non-economic damage, but that is not so.  Armstrong explained in detail how the events that unfolded in this matter affected him.  He explained his fear, sadness, concern for his own welfare and that of his friends and family.  He explained how the events of this case marred his greatest achievement, becoming elected student body president.  He explained how his roommates and female friends lived in fear of Shirvell.  Some of those friends also testified to the prevailing concern they had for Armstrong's safety, as did police witness Melissa Overton.  This evidence reflected the pervasive and troubling concern Shirvell posed in Armstrong's life.  Armstrong's father also

offered compelling testimony about how he observed these events affecting and afflicting his son.

Of course, the jury also learned that the Defendant's behavior had been so outrageous as to catch the attention of a national audience. The jury heard how thousands of people had called the State Attorney General's office calling for Shirvell's termination, not to mention people who had threated Shirvell with death.

Taking all of this evidence in the light most favorable to the Plaintiff, the jury's award clearly was not excessive, but rather a reflection of the national irrelevant outrage Defendant already knew or should have known his conduct had generated.

## XI.    No "Due Process" Concern with Verdict

The jury in this case awarded $900,000 out of a total $4,500,000 (or 20% of the total verdict) in exemplary damages.

None of the cases Defendant cites stands for the proposition that a punitive damage award that is a small fraction of the compensatory award is constitutionally excessive, because it is quite clear such an award is perfectly proper. *See Fastenal Co. v. Crawford*, 609 F.Supp.2d 650 (E.D. Ky. 2009) (recognizing that a punitive damage award that was 20% of the total compensatory award was a "more than constitutionally acceptable ratio"). In fact, the cases Defendant cites actually explain that a punitive damage award does not approach the line of constitutional excess until it reaches 400% or even 1000% of the compensatory award. For example, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), cited at Mot. 12, held "an award of more than four times the amount of compensatory damages **might** be **close to the line** of constitutional impropriety." *Id.* at 425 (emphasis added). And *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), which Defendant also cites at Mot. 12, reaffirmed

16

the Supreme Court's standing precedent holding that an award ratio must not be "more than 10 to 1" and a "punitive damages award of more than 4 times the amount of compensatory damages…did not cross the line into the area of constitutional impropriety." *Id.* at 582 (internal punctuation, citation omitted).

Even if an analysis of excess were justified, the "Court may not substitute its judgment for that of the jury but rather must consider the proof in and weigh the evidence of this case to determine whether or not the jury's verdict is within the confines set by law." *Day v. Ingle's Markets, Inc.*, 2006 WL 239290 (E.D. Tenn. 2006), **Exhibit F**. It must afford "great deference" to the verdict as delivered. *Id.* (upholding jury's $2,500,000 punitive damage award, although 500% of the compensatory damage award and although "plaintiff's evidence justifying punitive damages was meager," and, in fact, the court "would have resolved the conflicting proof" as to liability as a whole in favor of the defendant, not the plaintiff, had it been the finder of fact). The following sections address the factors courts do consider when properly reviewing punitive damages awards solely for sake of completeness in light of Defendant's submission.

### A. Case Law Requires the Court to Defer to the Jury's Finding of Reprehensibility Here

Defendant urges that his conduct was not worthy of punitive damages because he acted with good faith. Mot. 12. In short, he argues there was no reprehensible conduct.

However, that argument was made to and **<u>rejected</u>** by the jury. There is no dispute here that the jury was properly instructed as to the circumstances under which it could award punitive damages. The award of punitive damages here in light of that proper instruction satisfies the "reprehensibility" determination, and it is not for the Defendant or this Court to revisit that factual finding.

Among other things, Plaintiff adduced evidence at trial that Defendant published his odious content without a single source.  When Shirvell was warned by senior attorneys in the State Attorney General's office that what he was doing was courting a civil lawsuit, the evidence shows that he responded defiantly, insisting he would just declare bankruptcy if found liable.  This evidence alone belies Shirvell's sole argument, viz. that he was acting with the good faith belief that he was behaving appropriately.

In any case, Shirvell's meager arguments clearly do not support remittitur where the jury found improper conduct.  For example, in *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470 (6th Cir. 2007), the plaintiff was awarded punitive damages in a case in which the defendant maintained that its conduct was a misunderstanding (mistake) and the isolated act of a rogue employee, and not intentional or willful.  The Sixth Circuit noted that the "jury, however, rejected these arguments and found that defendants acted willfully" by granting the punitive damages in the first place.  *Id.* at 486.  Notably, the Appellate Court felt there was "**not** a strong showing of intentional malice or deceit" supporting this finding.  *Id.*  In fact, it found **no other factor** supported a finding of "reprehensibility."  *Id.* at 486-490.  Nevertheless, the court was required to view the light in the most favorable to the plaintiff and afford deference to the jury's determination.  That determination reflected "reprehensibility" sufficient to support a punitive damage award of 100-200% of the compensatory damage award.

Likewise, in the *Day* case, *supra*, **Exhibit F**, the court noted that had it been the finder of fact, it would not have awarded punitive damages, and indeed it would not have found for the plaintiff on the issue of liability at all.  *Id.* at 12.  Yet the court also recognized and honored the jury's role in fact finding.  It noted that since the jury had to find deliberate or reckless conduct to award punitive damages, it should and would adopt that view of the evidence.  The

18

jury's determination that the conduct was reckless or deliberate was sufficient to uphold a punitive damage award that was five times greater than the compensatory award.  *Id.* at 14-15.

### B.  Other Factors Support "Reprehensibility"

Defendant also urges that there was no repeated action in this case and Plaintiff was not financially vulnerable.  *Id.*  Under the precedent set forth above, these factors would not be controlling even if Defendant were correct in his unsupported characterizations.  The cases cited above all found no indicia of "reprehensibility" beyond the jury's verdict; nevertheless, the verdict *itself* reflected sufficient reprehensibility to support a punitive award at least equal to the compensatory award.  Likewise here the jury verdict itself would be sufficient to support the punitive damages award regardless of the other factors Defendant cites.

Nevertheless, Plaintiff addresses these factors solely in light of Defendant's submission. First, with regard to the repeated action issue, the jury found scores of instances of misconduct here.  The publication of defamatory materials went on for months and months.  To say that there was no repetition here flies in the face of the jury's verdict. Meanwhile, to argue that Plaintiff was not economically vulnerable, Defendant cites not a single case, nor line of evidence.  He simply asserts that Plaintiff comes from a privileged background.  In fact, when Plaintiff was harmed in this matter, he was a student—as the evidence at trial demonstrated. He had no income, and he lived in a rented apartment with several roommates.  Again, these facts are actually part of the record here, unlike Defendant's assertions.

The simple fact is, the jury's award was supported by evidence and nowhere near the constitutional line of excess, per Defendant's own case law.  As such, this argument too must be rejected.

**Relief Requested**

Defendant has not presented any basis to remit the verdict or to order a new trial.

Plaintiff urges that this motion should be denied in its entirety.

> **DEBORAH GORDON LAW**
> Deborah L. Gordon (P27058)
> /s/Sarah S. Prescott (P70510)
> Attorneys for Plaintiff/Counter-Defendant
> 33 Bloomfield Hills Parkway, Suite 220
> Bloomfield Hills Michigan 48304
> 248-258-2500
> dgordon@deborahgordonlaw.com
> sprescott@deborahgordonlaw.com

Dated:  October 12, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2012, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

> **DEBORAH L. GORDON LAW**
> /s//Sarah S. Prescott (P70510)
> Attorneys for Plaintiff
> 33 Bloomfield Hills Parkway, Suite 220
> Bloomfield Hills, MI 48304
> (248) 258-2500
> dgordon@deborahgordonlaw.com