UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER ARMSTRONG,

      PLAINTIFF,         CASE NO. 11-11921

v.

                                             SENIOR U.S. DISTRICT JUDGE
ANDREW SHIRVELL,                 ARTHUR J. TARNOW

      DEFENDANT.
_____/

**ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW [199] AND DEFENDANT'S MOTION FOR NEW TRIAL OR MOTION TO AMEND THE JUDGMENT REGARDING DAMAGES [200]**

**I. Introduction**

Before the Court are Defendant Andrew Shirvell's Renewed Motion for Judgment as a Matter of Law [199] and Motion for New Trial or Motion to Amend the Judgment Regarding Damages [200], filed on September 21, 2012.

Beginning on August 7, 2012, a jury trial was held on Plaintiff's claims of defamation, invasion of privacy/false light, intentional infliction of emotional distress, and stalking. On August 16, 2012, the jury found in favor of Plaintiff on all claims. The jury awarded Plaintiff damages in the amount of $4.5 million.

In the instant motions, Defendant seeks judgment as a matter of law on all claims, a new trial, and in the alternative, a remittitur of the damages awarded.

For the reasons stated below, Defendant's Renewed Motion for Judgment as a Matter of Law [199] and Motion for New Trial or Motion to Amend the Judgment Regarding Damages [200] are **DENIED**.

## II. Analysis

### A. Judgment as a Matter of Law

Defendant Shirvell brings his Renewed Motion for Judgment as a Matter of Law [199] pursuant to Federal Rule of Civil Procedure 50. In ruling on a renewed motion for judgment as a matter of law after a verdict has been returned, this Court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law. Fed. R. Civ. Pro. 50(b). In reviewing a motion for judgment as a matter of law, this Court must consider the evidence in the light most favorable to the non-moving party, and must give that party the benefit of all reasonable inferences. *Tuck v. HCA Health Servs. of Tenn.*, 7 F.3d 465, 469 (6th Cir. 1993)(citations omitted). In considering the evidence, this Court "may not weigh the evidence or make credibility determinations, as these are jury functions." *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999)(citations omitted). Moreover, dismissal is improper "where the nonmovant presented sufficient evidence to raise a material issue of fact for the jury." *Id.* (citations omitted). Therefore, the decision to grant judgment as a matter of law is appropriate "'whenever there is a complete absence of pleading or proof on an issue

material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ.'" *Id.*(quoting *O'Neill v. Kiledjian*, 511 F.2d 511, 513 (6th Cir. 1975)).

*i. Defamation and Invasion of Privacy/False Light*

Defendant Shirvell first argues that Plaintiff Armstrong is not a private individual, and is instead either a public figure, a public official, or a limited-purpose public figure, and therefore the jury's finding of negligent defamation must be vacated as a matter of law. To make a showing of defamation under Michigan state law four elements must be proven:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication [defamation per quod].

*Mitan v. Campbell*, 474 Mich. 21, 24 (2005) (internal citations omitted). When the plaintiff is a public official or public figure, the plaintiff has the additional burden of showing clear and convincing evidence of actual malice on the part of the defendant. *Faxon v. Michigan Republican State Cent. Comm.*, 244 Mich. App. 468, 474 (Mich. Ct. App. 2001). Actual malice means that the "injurious falsehood was made knowing that it was false or with reckless disregard for whether it was true." *Id.*

A public figure is a person who holds "pervasive power" or as to whom there is "clear evidence of general fame or notoriety in the community and pervasive involvement in the affairs of society." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974). Courts may not "lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes." *Id.* The "designation has been applied sparingly," only to "those persons whose names have become household words." *Bufalino v. Detroit Magazine, Inc.*, 433 Mich. 766, 788-89 (1989).

"What determines whether an officer is a public official for First Amendment purposes is the presence or absence of 'substantial responsibility' and 'control' over governmental processes that affect the lives, liberty and property of citizens." *Woodruff v. Ohman*, 29 Fed. Appx. 337, 348 (6th Cir. 2002) (citing *Rosenblatt v. Baer*, 383 U.S. 75, 85 (U.S. 1966)).

A limited purpose public figure is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz*, 418 U.S. at 351. A controversy for these purposes must be more than a cause celebre or a matter that attracts public attention. *Time, Inc. v. Firestone*, 424 U.S. 448, 454 (U.S. 1976); *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 167 (1979). The defamer cannot be the person actually engaged in and

affected by the alleged controversy. *See, e.g.*, *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) ("[T]hose charged with defamation cannot, by their own conduct, create their own defense by making claimant a public figure.").

During trial, this Court ruled that Plaintiff Armstrong was a private individual. Defendant Shirvell now presents much the same evidence as previously shown to the Court, and again argues that Armstrong is a public figure, a public official, or a limited-purpose public figure. Specifically, Defendant argues that the election of Plaintiff Armstrong as the student body president at the University of Michigan, mention of Armstrong's name in news publications as the first openly gay student president, and Armstrong's public statements openly identifying his sexual orientation render Plaintiff Armstrong a public figure.

Again, this Court does not find Defendant's arguments persuasive. The mention of Plaintiff Armstrong in a limited number of mostly local news publications does not render Armstrong a "household word[]." *Bufalino*, 433 Mich. at 789. Moreover, Plaintiff's position as student body president did not provide Plaintiff with control or responsibility for government processes, and therefore, does qualify him as a public official. *Woodruff*, 29 Fed. Appx. at 348. Finally, Defendant Shirvell also fails to identify a public controversy in which Plaintiff was involved, other than the attention brought on Plaintiff by Defendant's own statements and actions. Defendant suggests

that through Armstrong's advocacy on behalf of lesbian, gay, bisexual, and transgender people, and his open identification of his own sexual orientation, Plaintiff has "thrust himself into public controversy." However, the only showing Defendant attempts to make of an actual controversy is a one-sentence quote from an article that simply identifies Plaintiff as the first openly gay student president of the University, and states that Plaintiff intended to pursue creating a gender-neutral campus housing option. Again, a matter of public interest is not in and of itself a public controversy. As such, Plaintiff is also not a limited-purpose public figure.

Therefore, as this Court ruled at trial, Plaintiff is a private individual for the purposes of Defendant's claims. Moreover, a private plaintiff that is able to prove actual malice is entitled to damages associated with this claim, including damages to reputation or feelings. *Glazer v. Lamkin*, 201 Mich. App. 432, 437 (Mich. Ct. App. 1993).

Defendant then argues that the evidence presented at trial does not support the jury's finding of actual malice. Defendant basis this argument on his own testimony, in which he states that he believed the statements he made pertaining to Plaintiff Armstrong were true. However, Defendant's state of mind was a material issue of fact for consideration by the jury. *See Jackson*, 191 F.3d at 657. This Court must consider Defendant's testimony in the light most favorable to Plaintiff, and the Court may not

make any determinations as to the credibility of this evidence, for that is the role of the jury. *See id.* Therefore, this Court declines to overrule the jury's verdict as to the claim of actual malice.

Next, Defendant argues that the jury's findings on the claims of defamation and invasion of privacy/false light should be vacated as a matter of law because the statements at issue are substantively true, constitute constitutionally protected speech, or are rhetorical hyperbole. Plaintiff's complaint included nearly forty allegedly actionable statements made by Defendant. At trial, the jury was presented with approximately fifteen pages of allegedly defamatory statements. Defendant's Motion for Judgment as a Matter of Law [199], now before the Court, makes no specific mention to any particular statement, and instead refers the Court to two previous filings, Defendant's February 24, 2012 Motion for Summary Judgment [111] and a January 21, 2011 response to a grievance filed with the attorney grievance committee. These two documents make specific reference to less than half of the statements at issue in this case. Of the unspecified statements, Defendant also fails to delineate which statements he alleges are true, which are allegedly protected opinion speech, and which are allegedly rhetorical hyperbole. This Court cannot dismiss the jury verdict based on Defendant's generalized claims.

Defendant also asserts that the findings as to the claims of defamation and invasion of privacy/false light should be vacated as a matter of law because they are

unsupported by evidence of damages. This Court may remit the damages awarded Plaintiff by the jury only if "the award clearly exceeds the amount which, under the evidence in the case was the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss." *Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 156 (6th Cir. 1996)(internal quotation marks and citations omitted). "Unless the award is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience,...or (3) the result of a mistake, we must let the award stand." *Id.* (internal quotation marks and citations omitted).

Defendant argues that because Plaintiff was supported by his university and family while Defendant made the statements at issue, Plaintiff then did not suffer any damage to his reputation. However, Defendant Shirvell fails to note that in addition to reputational damages, the jury instructions also allowed for damages for imputation of criminal offenses, as well as damages to Plaintiff's feelings. *See Glazer v. Lamkin*, 201 Mich. App. at 437. Given the evidence of the pervasiveness of Defendant's conduct presented at trial, damages to Plaintiff's emotional well-being presented a genuine issue of fact to the jury. Reviewing all evidence in a light most favorable to Plaintiff, Defendant's argument here fails, and the jury's verdict is upheld.

Defendant Shirvell then argues that the findings as to the claims of defamation and invasion of privacy/false light must be vacated as a matter of law because Plaintiff cannot obtain money damages for both claims based on the same statements.

8

Defendant specifically argues that the jury awarded damages for the two claims based on all the same statements. While "double recovery" of damages is generally not permitted, Defendant presents no evidence that the jury in fact based its ruling as to the claims of defamation and invasion of privacy/false light based on precisely the same statements. *See Woodruff*, 29 Fed. Appx. at 348 (6th Cir. 2002) (citing *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 333 (U.S. 1980)). In fact, the verdict form specifically instructed the jury to mark which statements supported their findings as to each claim. Therefore, Defendant Shirvell's argument as to possible double recovery of damages is without merit.

*ii. Stalking*

Next, Defendant Shirvell argues that the jury's finding on the claim of stalking is not supported by the evidence presented at trial, because Defendant's activities are constitutionally protected forms of expression.

Under Michigan law, a plaintiff "may maintain a civil action against an individual who engages in conduct that is prohibited under section 411h or 411i of the Michigan penal code." M.C.L. § 600.2954(1). Stalking is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." M.C.L. § 750.411h(1)(d). The statute

also defines "harassment" as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." M.C.L. § 750.411h(1)(c). "Unconsented contact" means:

> any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following: (i) Following or appearing within the sight of that individual. (ii) Approaching or confronting that individual in a public place or on private property. (iii) Appearing at that individual's workplace or residence. (iv) Entering onto or remaining on property owned, leased, or occupied by that individual. (v) Contacting that individual by telephone. (vi) Sending mail or electronic communications to that individual. (vii) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.

M.C.L. § 750.411h(e).

Defendant specifically argues that he made no direct contact with Plaintiff, and that his four alleged protests, "Chris Armstrong Watch" blog, and videotaping of police activity at Plaintiff's home, are protected or legitimate activity. He also argues that Plaintiff failed to show that any contact was "uncontested," because Plaintiff failed to directly communicate to Defendant that he wished for Defendant's conduct to cease. However, the statute not only specifically notes that this uncontested contact

10

includes activities initiated without consent, not only continued without consent, but also that harassment is not "limited to" this unconsented contact. As for Defendant Shirvell's alleged protected activities, at trial, Plaintiff presented testimonial evidence questioning the legitimacy of Defendant's activities, such as Defendant's failure to record the criminal activity he allegedly witnessed at Plaintiff's home. Making all inferences in favor of the nonmovant, Defendant's claim here also fails.

   *iii. Intentional Infliction of Emotional Distress*

   Finally, Defendant Shirvell argues that the jury's finding as to the claim of intentional infliction of emotional distress must be vacated because it is unsupported by the evidence produced at trial.

   A showing of intentional infliction of emotional distress requires: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *N. Pointe Ins. Co. v. Emanuel Steward & Emanuel Steward Enters.*, 2004 Mich. App. LEXIS 615, at *10 (Mich. Ct. App. Mar. 4, 2004)(internal quotation marks and citations omitted). Defendant argues again that his conduct at issue in this case is constitutionally protected and alternatively, does not meet the required level of outrageousness. *See id.* at *10-12 ("...conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). Again, Defendant has not delineated what conduct and which

11

statements are protected. Moreover, Defendant's arguments as to the outrageousness of his conduct do not overcome the required showing that there are "no disputed issues of fact" or that "reasonable minds would not differ" on the fact issue. *Jackson*, 191 F.3d at 657 (quoting *O'Neill*, 511 F.2d at 513 (6th Cir.). Therefore, the jury's verdict as to this claim stands.

**B. New Trial**

Alternatively, Defendant Shirvell also brings a separate Motion for New Trial [200] under Federal Rule of Civil Procedure 59. Following a jury verdict, a new trial is permitted "when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996)(internal quotation marks and citations omitted). Defendant makes eight separate arguments as to errors made at trial.

First, Defendant argues that because the jury verdict form included many statements not originally identified in Plaintiff's complaint, Defendant was prejudiced during trial. Defendant raised this objection prior to trial, raising the same arguments, and they were rejected by this Court. For the same reasons, the Court deny's Defendant a new trial on this claim.

Defendant then contends that this Court's exclusion of a series of articles prejudiced him because they would have allowed him to better argue that Plaintiff was a public figure, and to better represent Defendant's state of mind. As Defendant himself asserts, Federal Rule of Civil Procedure 61 demands that, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial…the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 60. Defendant has not shown that the exclusion of these articles tramped on his substantial rights or was so seriously erroneous as to violate the requirements of justice.

Third, Defendant argues that this Court's exclusion of two witnesses, Konrad Siller, a Washtenaw County Assistant Prosecutor, and Kelly Cunningham, the director of public affairs for the University of Michigan, resulted in an unfair trial. Along with Siller's testimony, Defendant asserts that he sought to admit into evidence a document entitled: "Washtenaw County Prosecutor's Memorandum denying Plaintiff Armstrong's request for criminal 'stalking' charges based on First Amendment grounds, dated October 26, 2010, and written by Chief APA Konrad Siller." Defendant argues that Siller's testimony and this report would have shown that Defendant had not been criminally charged because of his First Amendment rights.

Defendant asserts that Cunningham's testimony would have allowed him to show that Plaintiff Armstrong intended to go on the Anderson Cooper Show in October 2010 in order to speak about Defendant Shirvell and that Plaintiff is a public figure. Defendant also contends that the exclusion of these witnesses prejudiced him because Plaintiff used Defendant's failure to call witnesses at trial against him.

As the Court previously held, Siller's testimony and report were properly excluded from trial because his failure to prosecute Defendant Shirvell is irrelevant to the issues before the jury, and is unduly prejudicial. Moreover, the pertinent statute specifically states that a "civil action may be maintained...whether or not the individual who is alleged to have engaged in conduct prohibited...has been charged or convicted." M.C.L. § 600.2954(2). In addition, the exclusion of both Siller and Cunningham did not effect Defendant's substantive rights at trial.

Next, Defendant Shirvell argues that this Court's failure to instruct the jury on Defendant's affirmative defenses prejudiced Defendant. Defendant Shirvell presented this Court with these defenses in the form of proposed jury instructions on July 29, 2012. These defenses focus on the possible truth of the statements at issue as well as the use of rhetorical hyperbole and opinions. The instructions read to the jury included the assertion that "[d]efamation is a statement which is false in some material respect," as well as that the "meaning of a statement is that meaning which, under the

circumstances, a reasonable person who hears or reads the statement reasonably understands to be the meaning intended." These portions of the instructions given to the jury largely encapsulate the affirmative defenses presented by Defendant. Therefore, Defendant Shirvell was not prejudiced by the exclusion of the affirmative defenses written by him.

Fifth, Defendant contends that he was prejudiced by the inclusion of the *de bene esse* depositions of Eric Restuccia and Tom Manatos, and the testimony of Ashley Schwedt and Mical Degraaff. Defendant previously filed a motion to quash and a motion in limine regarding Restuccia and Manatos before this Court. He incorporates those motions here, and makes no other argument. Defendant contends that these depositions were scheduled at the last moment and inconvenienced him as a pro se and out-of-state party. The practice of taking *de bene esse* depositions prior to trial is often common practice known to practitioners, and a practical resolution to a witnesses' unavailability. *See El Camino Res., Ltd. v. Huntington Nat'l Bank*, 2009 U.S. Dist. LEXIS 36704, at *15-16 (W.D. Mich. Apr. 30, 2009). While these depositions may have inconvenienced Defendant Shirvell, Defendant provides no explanation as to how this inconvenienced substantially prejudiced him at trial.

As for Schwedt and Degraaff, Defendant argues that the testimony of these two trial witnesses should be excluded because Plaintiff failed to provide Defendant with

summaries of the expected testimony as detailed in Magistrate Judge Komives' February 3, 2012 order. However, Plaintiff provided Defendant discovery disclosures in February and again in March. Defendant deposed witness Schwedt. Again, Defendant fails to provide this Court any evidence of prejudice caused by any discovery delay as to these two witnesses.

Next, Defendant Shirvell argues that Plaintiff's questioning of Defendant regarding his termination from employment with the Michigan Attorney General's office was prejudicial. The exchange proceeded as follows:

> Q: Well, it's relevant because you said a few minutes ago in this courtroom that Chris Armstrong persecuted you. I asked was anybody persecuted while Chris was President, and you said you were.
> A: Right.
> Q: And then I asked you what the persecution was, and you listed some things. And at your dep you also said you were persecuted because you lost your job.
> A: Right, at the dep I stated that. I didn't say that here today.
> Q: Well, I realize that, but I am reminding you of what you have told me the reasons were previously. So, now I'm asking you a few questions about it.

"Admission of improper evidence at trial will not warrant a new trial unless a different ruling would have caused a different outcome at trial." *Hillside Prods. v. County of Macomb*, 389 Fed. Appx. 449, 459 (6th Cir. 2010). Defendant did not object to this line of questioning at trial, nor has Defendant now shown how the exclusion of this testimony would have resulted in a different outcome. *Id.* (noting that

the alleged misconduct was not timely objected to.) Therefore, the admission of this testimony does not merit a new trial.

Next, Defendant objects to this Court's rulings limiting arguments relating to First Amendment and restricting the jury's application of the First Amendment. Defendant Shirvell specifically notes the Court's instruction to the jury as follows: "[w]ith regard to the defamation claim, you may not consider whether the First Amendment applies, nor whether any statement is an opinion. You must consider the laws I give it to you." The Court's jury instruction was neither improper nor prejudicial because the application of any First Amendment protections is a legal issue decided by the Court rather than the jury. The jury was properly instructed as to the elements of a claim of defamation, including the whether the statements at issue were false. Defendant also states that " Plaintiff Armstrong's counsel was given free reign throughout the trial to discuss the First Amendment in any manner she pleased," but offers no citation. Therefore, Defendant's claims here are without merit and the request for new trial is denied.

Finally, Defendant argues that the conduct of Plaintiff's counsel at trial resulted in prejudice. Specifically, Defendant objects to counsel's decorum while questioning Defendant and during counsel's cross-examination. "When a new trial is requested on the basis of counsel's conduct, there must be clear prejudice that would justify a new trial." *Hillside Prods.*, 389 Fed. Appx. at 459 (citations omitted). Defendant Shirvell

has failed to show how counsel's conduct was clearly prejudicial to his case, and therefore his request for new trial is again denied.

**C. Remittitur of Damages**

In Defendant Shirvell's second alternative, Defendant seeks new trial or an amendment of the judgment because of a grossly excessive damage award. Defendant reiterates his arguments as to damages and the jury's award to Plaintiff made earlier in Defendant's Motion for Judgment as a Matter of Law [199]. *See supra* at 8-9. Defendant also requests that all compensatory damage awards are reduced to a nominal award of one dollar, because Plaintiff suffered no economic loss. Defendant then asserts that the exemplary awards are unconstitutional.

As stated previously, this Court may grant remittitur only if "the award clearly exceeds the amount which, under the evidence in the case was the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss." *Bickel*, 96 F.3d at 156 (internal quotation marks and citations omitted). "Unless the award is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience,...or (3) the result of a mistake, we must let the award stand." *Id.* (internal quotation marks and citations omitted). Moreover, the district court's review of a motion for remittitur is reviewed under an abuse of discretion standard. *Id.*

The Sixth Circuit Court has delineated three factors in considering whether a punitive damages award is constitutionally excessive: "(1) the degree of

reprehensibility of the conduct; (2) the disparity between the harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages and the civil penalty imposed in comparable cases." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (U.S. 1996). "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id.* at 575. "While there is no exchange rate for converting reprehensibility into dollars, an award at a minimum 'should reflect the enormity of the offense.'" *Gibson v. Moskowitz*, 523 F.3d 657, 664 (6th Cir. 2008) (quoting *BMW of N. Am., Inc.*, 517 U.S. at 575).

First, Defendant's argument as to Plaintiff's lack of economic loss in regards to compensatory damages is without merit, as stated above, as the jury was to also consider non-economic damages, such has harm to Plaintiff's well-being and reputation. *See supra* at 8-9. As to Defendant's argument of an unconstitutional award, Defendant specifically contends that his actions were not reprehensible because he acted in good faith. Defendant made this argument to the jury, and the jury found against the Defendant. Through its award the jury has shown the degree to which it found Defendant's actions reprehensible. This Court must give all inferences to the Plaintiff in reviewing this question of fact presented to the jury. Moreover, the jury's punitive award constitutes one fifth of its total award of damages to Plaintiff.

Defendant attempts to argue that this award is excessive. However, courts have upheld awards with similar ratios of compensatory to punitive awards. *See Fastenal Co. v. Crawford*, 609 F.Supp.2d 650 (E.D. Ky. 2009); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of N. Am., Inc.*, 517 U.S. 559 (U.S. 1996).

Therefore, Defendant Shirvell's request for new trial based on excessive damages and request for the remittitur of damages is denied.

### III. Conclusion

For the reasons stated above, Defendant's Renewed Motion for Judgment as a Matter of Law [199] and Motion for New Trial or Motion to Amend the Judgment Regarding Damages [200] are DENIED.

**IT IS HEREBY ORDERED** that Defendant's Renewed Motion for Judgment as a Matter of Law [199] is **DENIED**.

**IT IS HEREBY ORDERED** that Motion for New Trial or Motion to Amend the Judgment Regarding Damages [200] is **DENIED**.

**SO ORDERED**.

                                        s/Arthur J. Tarnow
                                        ARTHUR J. TARNOW
                                        SENIOR UNITED STATES DISTRICT JUDGE

Dated: September 11, 2013