UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTOPHER ARMSTRONG**, Plaintiff, vs. **ANDREW SHIRVELL,** Defendant. | 2:11-CV-11921-TGB-APP  ORDER RENEWING CIVIL JUDGMENT |

Before the Court is Plaintiff Christopher Armstrong's Motion for a Renewed Civil Judgment under MCL §§ 600.2903 and 600.5809(3). (ECF No. 253.) Defendant Andrew Shirvell has filed a response (ECF No. 254), and Armstrong has further filed a reply (ECF No. 255). For the reasons explained below, Armstrong's motion will be **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Christopher Armstrong, a former University of Michigan student council president, brought this lawsuit against former Michigan Assistant Attorney General Andrew Shirvell in Washtenaw County Circuit Court after Shirvell engaged in a months-long online and in-person "campaign" against Armstrong. This "campaign" centered around Shirvell's inability to tolerate the fact that Armstrong was openly gay and included the creation of defamatory social media pages and anti-gay blog posts, television appearances, tracking down Armstrong on campus,

1

posting flyers around campus and in student mailboxes, protesting in front of Armstrong's house, appearing at parties where Armstrong was expected, following Armstrong's friends around Ann Arbor, and making false accusations about Armstrong to his employers. As Armstrong was a Michigan citizen, and Shirvell was then a New York citizen, Shirvell chose to remove the case to federal court under 18 U.S.C. § 1332.

The case proceeded to trial, and a jury found Shirvell liable for defamation, false light invasion of privacy, intentional infliction of emotional distress, and stalking. The jury awarded a total of $4.5 million in damages: $750,000 in compensatory damages and $500,000 in exemplary damages for defamation; $1,000,000 in compensatory damages for casting Armstrong in a false light; $1,750,000 in compensatory damages for intentional infliction of emotional distress; and $100,000 in compensatory damages and $400,000 in exemplary damages for stalking. The Court entered a judgment reflecting this verdict on August 24, 2012. (ECF No. 196.)

Shirvell appealed, attacking the sufficiency of the evidence supporting Armstrong's claims, the damages awards, and many of the legal rulings of the then-presiding Judge, the Honorable Arthur J. Tarnow. The Sixth Circuit rejected the majority of Shirvell's arguments. *See Armstrong v. Shirvell*, 596 F. App'x 433 (6th Cir. 2015). But it agreed with him on a single point—that, in light of Michigan's rule against double recovery on claims for defamation and false light and the lack of

an instruction to the jury that it could not award damages for the same statements under both theories, the damages award for false light needed to be reversed. *Id.* at 451. Accordingly, the Sixth Circuit vacated the judgment and remanded the case with instructions to enter an amended judgment in the amount of $3.5 million, reflecting a deduction of the $1 million award for false light invasion of privacy. *Id.*; *id.* at 460.

The Sixth Circuit's mandate issued on May 27, 2015 (ECF No. 250); Shirvell then unsuccessfully petitioned for a writ of certiorari. *See Shirvell v. Armstrong*, 577 U.S. 956 (Nov. 2, 2015) (denying certiorari). A formal document reflecting an amended judgment never entered on this Court's docket after it received the appellate mandate. Meanwhile, Armstrong says that he retained counsel in the State of Florida (where Shirvell now resides) to collect on the judgment but has been unsuccessful in doing so. (ECF No. 253, PageID.8137.)

The case remained closed and dormant on the Court's docket until August 24, 2022, when Armstrong filed an "ex parte" motion for a renewed judgment under MCL §§ 600.2903 and 600.5809(3). It was then transferred to the undersigned. (*See* Text-only docket entry of August 26, 2022.) Shirvell filed a response (ECF No. 254), to which Armstrong replied (ECF No. 255). The Court will now resolve the motion.

## II.   LEGAL STANDARD

There is no specific federal statute of limitations governing the period during which a federal judgment is effective. *See* Fed. R. Civ. P.

3

69; *see also In re Fifarek*, 370 B.R. 754, 758 (W.D. Mich. June 20, 2007). Where no federal statutes apply, federal courts look to state practices and procedures. *See Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 594-95 (6th Cir. 1999).

With some exceptions that are not relevant here, Michigan law establishes a ten-year limitations period on the enforcement of judgments. *See* MCL § 600.5809(3) ("[T]he period of limitations is 10 years for an action founded upon a judgment or decree rendered in a court of record of this state, or in a court of record of the United States or of another state of the United States, from the time of the rendition of the judgment or decree."). A party can extend this period by filing renewal actions to enforce the judgment, so long as the renewal actions are initiated within ten years "of the rendition of the judgment or decree." *Id.*; *see also* MCL § 600.2903 (providing that "[a]ny judgment in tort … of record in any court of record in this state may be sued on and renewed, within the time and as provided by law").

### III.  ANALYSIS

In his motion, Armstrong states that Shirvell has paid nothing on the judgment; Armstrong therefore seeks to renew it under Michigan law. (ECF No. 253, PageID.8137.) Shirvell responds that, given the Sixth Circuit's actions in this case and the lack of a separate document reflecting an amended judgment on this Court's docket, there is no

4

judgment to renew.¹ (ECF No. 254, PageID.8151.) He further argues that Armstrong's motion is untimely because, he says, the Court cannot provide the relief Armstrong seeks within Michigan's strict ten-year limitation. (*Id.* at PageID.8152-55.)

Under Federal Rule of Civil Procedure 58(a), a separate document is generally required for each judgment and amended judgment. As the Advisory Committee Notes on the 2002 amendment to the Rule observe, however, courts have not always strictly complied with the requirement to enter separate documents for amended judgments. *See also Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Nat. Res.*, 71 F.3d 1197, 1202 (6th Cir. 1995) (acknowledging that, though separate entry of judgment by district court was required by civil rules, appellate mandate could be read to have "end[ed] matters"). Under the 2002 amendments to

---

¹ In his reply brief, Armstrong urges the Court to disregard Shirvell's response in its entirety, noting that Shirvell has been disbarred and that Michigan courts have deemed ex parte motions sufficient to renew civil judgments under the applicable rules. *See Van Reken v. Darden, Neef & Heitsch*, 674 N.W.2d 731, 735 (Mich. App. 2003); *see also Lehman Bros. Bank, F.S.B. v. Ashley Mgmt., LLC*, 2019 WL 4866126, at *1 (E.D. Mich. Sept. 10, 2019). He appears to rely on *In re Fifarek*, 370 B.R. 754 (W.D. Mich. June 20, 2007), for the proposition that a defendant may challenge renewal of a judgment only after it has been renewed. (ECF No. 255, PageID.8169.) But *In re Fifarek* contains no such holding; there the court went on to consider the defendant-debtor's response. *Id.* at 762. Armstrong points to no authority holding that the Court *cannot* consider Shirvell's response. In accord with due process, the Court will address it. The Court is also unaware of any authority suggesting that a disbarred attorney, like Shirvell, cannot appear on his own behalf.

the Rule, when a court fails to enter a separate document as required by the Rule, a litigant may request the entry of judgment on a separate document. *See* Fed. R. Civ. P. 58(d). If a litigant does not do so, Federal Rule of Civil Procedure 58(c)(2)(B) provides that judgment nonetheless enters 150 days following the relevant entry in the civil docket. *See In re Metro. Gov't of Nashville & Davidson Cty.*, 606 F.3d 855, 860 (6th Cir. 2010). Committee Notes instruct that this Rule "must be applied with common sense to other questions that may turn on the time when judgment is entered."

In this case, as noted above, the Sixth Circuit issued an opinion vacating the judgment with instructions to enter an amended judgment in Armstrong's favor in the amount of $3,500,000. *Armstrong*, 596 F. App'x at 460. The opinion made clear that no further proceedings were contemplated, other than entry of the amended judgment. *Cf. Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Honeywell Int'l Inc.*, 2022 WL 1019218, at *2 (E.D. Mich. Apr. 5, 2022) (concluding that prevailing defendant's request for amended judgment was appropriate after issuance of mandate that contemplated further proceedings). Although a separate document reflecting a new judgment never entered in this case, the Sixth Circuit's mandate issued on May 27, 2015 and was entered on this Court's docket the same day. *See* Fed. R. App. P. 41(c) (providing that mandate is effective on date of entry). The entry of the mandate marked the point when jurisdiction over the case

6

returned to this Court. *See Fort Gratiot Sanitary Landfill, Inc.*, 71 F.3d at 1202. By mechanical operation of the 150-day provision in Federal Rule of Civil Procedure 58(c)(2)(B), the amended judgment entered on October 26, 2015.[2]

Given the operation of these rules, Shirvell's arguments that there is no judgment in effect and that Armstrong's motion is untimely are without merit. The 2015 judgment Armstrong seeks to renew falls well within the 10-year period allotted by Michigan's legislature.

Shirvell urges that the doctrine of laches nonetheless prevents the Court from entering a renewed judgment or any separate document reflecting an amended judgment. The doctrine of laches applies "to cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Nykoriak v. Napoleon*, 964 N.W. 2d 895, 903 (Mich. App. 2020) (internal citations omitted).

Shirvell offers four reasons why he would be prejudiced by the entry of a renewed judgment, but none are persuasive. First, he asserts that the transfer of this case from Judge Tarnow to the undersigned allows Armstrong to "play fast and loose with the facts—and even make outright misrepresentations." (ECF No. 254, PageID.8157.) But the Federal Rules

---

[2] 150 days after May 27, 2015 actually falls on October 24, 2015, but that day is a Saturday and therefore the date of entry is extended until the next day that is not a Saturday, Sunday, or legal holiday. *See* Fed. R. Civ. P. 6.

7

contemplate reassignment of cases, such as this one, in which the judge who was originally assigned becomes unavailable. *See* Fed. R. Civ. P. 63. Here, the trial has already taken place; the record is set in stone. The undersigned has reviewed the record and is satisfied that this post-judgment motion, which does not require evaluating the credibility of any trial witnesses, may be resolved without prejudice to either party.

Second, Shirvell asserts that, because Armstrong did not ask for entry of judgment sooner, Shirvell has somehow been "prevented" from making payments on the judgment and is now in a worse financial position. (ECF No. 254, PageID.8157.) As noted above, however, there *was* an active judgment in place by operation of federal rules. *See, e.g.*, *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 488 (7th Cir. 2020) (recognizing that Fed. R. Civ. 58(c) has been amended to "deem a final judgment to have been entered 150 days after the entry in the civil docket of the order that apparently ended the case"). And Shirvell provides no support for his assertion that he is now worse off financially, or that anything happened preventing him from attempting to pay the damage award. The primary purpose of the Rule 58's "separate document" requirement is to provide clear notice of when the clock for filing an appeal begins to run. *See id.* That is not a concern here. Nothing "prevented" Shirvell from making payments on the judgment.

Third, relying on *Austin v. Niblick*, 666 F. App'x 547 (7th Cir. 2016), Shirvell argues that granting Armstrong's motion would result in an

8

unjust windfall to Armstrong in the form of accrued interest. In *Niblick*, a Seventh Circuit panel concluded that a plaintiff's 19-year delay in initiating collection proceedings on a default judgment meant that he had abandoned his claim—in large part because the interest on the judgment greatly exceeded the judgment (by approximately $183,000), and because the defendant believed the plaintiff had abandoned his claim. Shirvell's case is distinguishable. The parties have not directly raised the question of how much interest has accrued since judgment entered. But, unlike the defendant in Austin who had a default judgment entered against him and believed the plaintiff had abandoned his claim after 19 years, here Shirvell participated in his trial, appeal, and petition for certiorari to the United States Supreme Court. He was fully aware of the claim and the amount of the judgment. And Shirvell does not deny the allegations that Armstrong retained separate counsel in Florida to collect on the judgment. If anything, it is allowing Shirvell to escape a multi-million-dollar jury verdict based on a common misunderstanding of Rule 58's "separate document" requirement that would create an unjust windfall.

Finally, Shirvell asserts that Armstrong's failure to ask for a separate document reflecting the amended judgment unjustly permits him to extend the life of the amended judgment. (ECF No. 254, PageID.8158.) Michigan law, however, contemplates indefinite extension of the life of a judgment. *See Consol. Rail Corp.*, 170 F.3d at 595.

9

To the extent that Armstrong seeks to renew the amended judgment in the amount of $3,500,000, his Motion accords with Michigan law and will be **GRANTED.** To the extent that Armstrong seeks to renew judgment in the original amount of $4,500,000, as suggested in his original brief, the motion will be **DENIED**. The entry of such a judgment would exceed the scope of the Sixth Circuit's mandate, which this Court does not have authority to disturb. *See Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306-07 (1948).

## CONCLUSION

For the reasons explained above, Armstrong's motion for a renewed civil judgment is **GRANTED IN PART AND DENIED IN PART**. A renewed judgment in the amount of $3,500,000.00 will enter in Armstrong's favor.

**IT IS SO ORDERED**, this 15th day of November, 2022.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge